Hon. Richard Mills Formal Opinion Commissioner No. 2000-F5 New York State Education Department Education Building Albany, N Y 12234
Dear Commissioner Mills:
Your counsel has asked whether voter approval is required in order for a public library to be abolished or for all of its assets to be transferred to a newly-established association library. She has advised us that the Corning Area Public Library, a joint public library serving approximately seven municipalities in the Corning area, is currently closed due to a lack of funding. A proposal has been made to establish an association library to replace and assume the operations of the public library. The board of trustees of the association library would include representatives from the private sector in addition to representatives from the municipalities currently served by the public library.
Public libraries and association libraries are governed by Article 5 of the Education Law. The term "public library" means "a library, other than professional, technical or public school library, established for free public purposes by official action of a municipality or district or the legislature, where the whole interests belong to the public." Education Law § 253(2). The term "association library" means "a library established and controlled, in whole or in part, by a group of private individuals operating as an association, close corporation or as trustees under the provisions of a will or deed of trust." Id. The term "free" as applied to a library means "a library maintained for the benefit and free use on equal terms of all the people of the community in which the library is located." Id.
Education Law § 255(1), which governs the establishment of a public library, provides that the establishment of a public library may be authorized either by referendum or by vote of a municipality's elected governing body:
 By a majority vote at any election, or at a meeting of the electors duly held, any county, city, village, town, school district or other body authorized to levy and collect taxes; or by vote of its board of supervisors or other governing elective body any county, or by vote of its common council or by action of a board of estimate and apportionment or other proper authority any city, or by vote of its board of trustees any village, or by vote of its town board any town, or any combination of such voting bodies, may individually or jointly authorize the establishment of a public library. . . .
Public libraries are to be managed by trustees "who shall have all the powers of trustees of other educational institutions of the [University of the State of New York]." Education Law § 260(1). Within one month after taking office, a public library's first board of trustees "shall apply to the [Board of Regents of the University of the State of New York ("Regents")] for a charter in accordance with the vote establishing the library." Id. § 261. The Regents, in turn, are empowered to incorporate any such public library "by an instrument under their seal and recorded in their office." Id. § 216.
The Regents granted the Corning Public Library a provisional charter as a joint public library on September 26, 1969, after the Common Council of the City of Corning, the Town Board of the Town of Corning, and the Town Board of the Town of Erwin had each voted in favor of the library's establishment for the free use of the inhabitants of the City and Town of Corning and the Town of Erwin. The Regents made the provisional charter absolute on October 29, 1976. The Regents amended the library's charter on December 16, 1994, to, among other things, change the corporate name to "Corning Area Public Library," recite that the towns of Campbell, Caton, Hornby, and Lindley were among those municipalities authorizing the establishment and continuation of the library, and indicate that the library's service area comprised the City and Town of Corning and the Towns of Campbell, Caton, Erwin, Hornby, and Lindley.
As we construe the relevant statutory provisions, there appear to be at least three ways in which the abolition of a public library and/or the transfer of its property to an association library may be effectuated. First, under Education Law § 268, the library may be abolished pursuant to a vote of the electorate. Second, under Education Law §219, the Regents may, for sufficient cause, revoke the library's charter or, upon three-fourths vote of the library's trustees, issue an order of dissolution of the library. In that case, the library's assets are to be disposed of pursuant to the provisions of section 220. Third, under Education Law § 266, ownership and control of a public library with all its property may be transferred to a free association library, either by referendum or by vote of the relevant municipality's elected governing body, subject to the approval of the Regents.
 Education Law § 268, which sets forth a procedure for the abolition of a public library, provides in pertinent part:
 Any library established by public vote of any municipality or district, or by vote of the common council of any city, or by vote of the board of trustees of any village, or by action of school authorities, or by vote of the tribal government of an Indian reservation, or under section two hundred fifty-five of this chapter, may be abolished by majority vote at an election, or at a meeting of the electors duly held. . . .
 Thus, approval by the electorate and not simply by the municipality's elected governing body is necessary in order to abolish a public library under section 268. See Op St Compt No. 73-1190; Op St Compt No. 74-326.
 Section 268 further provides for the disposal of the library's property after it is abolished:
 If any such library is abolished, its property shall be used first to return to the regents, for the benefit of other free association or public or school libraries in that locality, the equivalent of such sums as it may have received from the state or from other sources as gifts for public use. After such return any remaining property may be used as directed in the vote abolishing the library, but if the entire library property does not exceed in value the amount of such gifts, it may be transferred to the regents for public use, and the trustees shall thereupon be free from further responsibility. No abolition of a public library shall be lawful until the regents grant a certificate that its assets have been properly distributed and its abolition completed in accordance with law.
 In addition, Education Law § 219 permits the Regents to abolish a corporation that they have incorporated. Education Law § 268 does not purport to be the exclusive procedure for the abolition of a public library, and therefore the procedures set forth in section 219 apply to public libraries as they do to other corporations chartered by the Regents, and permit a public library to be abolished without voter approval.
Education Law § 219(1) provides in pertinent part:
 The regents may, at any time, for sufficient cause, by an instrument under their seal and recorded in their office, change the name, or alter, suspend or revoke the charter or certificate of incorporation of any domestic corporation which they might incorporate under section two hundred sixteen. . . .
 Under this provision, unless a request is made by three-fourths of the corporation's trustees, the charter may not be altered or revoked without a hearing to be held on thirty days' notice to the corporation's trustees to permit objections to the proposed change to be considered. Id.
 Alternatively, under Education Law § 219(3), a corporation's trustees may, upon three-fourths vote to dissolve the corporation, petition the Regents to issue an order of dissolution. "If it appears to the satisfaction of the regents that there is no sufficient reason for the continuance of the corporation [and] that all taxes chargeable to the corporation have been paid, . . . the regents shall thereupon have power to dissolve the corporation." Id.
 In the event of the revocation of a corporation's charter or the dissolution of a corporation under section 219, section 220 sets forth the procedure for the disposition of the corporation's property. Within three months of the revocation or dissolution, the board of trustees must petition the Supreme Court for "an order directing the disposition of any and all property belonging to the corporation." Education Law § 220(1). The petition must "set forth a complete statement of all the assets, together with their location and an estimate of their value, and also a statement of the ascertainable debts of the corporation." Id. "The court shall direct the sale of sufficient designated assets to pay any outstanding debts and the cost of dissolution." Id. § 220(4). The Regents and the board of trustees "may present to the court their recommendation as to the disposition of the remaining property of the corporation [sic] if there be library books, objects of art or of historical significance, as far as possible they shall not be sold but shall be transferred to libraries, museums or educational institutions willing to accept them." Id.
 Finally, Education Law § 266 appears to provide a way for all the assets of a public library to be transferred to a free association library without voter approval. Education Law § 266, which governs transfers of libraries and their property, provides in pertinent part:
 By vote similar to that required by section two hundred fifty-five of this chapter [governing the establishment of a public library] any municipality or district or tribal government or combination of districts, . . . may, when such vote or action has been duly approved by the regents, transfer . . . the ownership and control of its library with all its property, real and personal, or any part thereof, to any municipality, or district, or institution providing for free library service; and the trustees or body making the transfer shall thereafter be relieved of all responsibility pertaining to property thus transferred.
 Thus, voter approval is not required for a transfer under section 266. Rather, such a transfer may take place upon a vote "similar to that required by" section 255, e.g., the vote of a city's common council, a town's town board, or a combination of such votes, followed by approval of the Regents. In order for a transfer to an association library to be permissible under section 266, the recipient must be an "institution providing for free library service," i.e., a free association library. Your counsel suggests that section 266 seems to contemplate the transfer of assets to an ongoing library, not a newly-chartered library. But section 266 makes no such distinction, and a transfer to either an existing or a newly-chartered library would seem to be permissible.
Your counsel has also asked whether, in light of Education Law §216-a(4), the voter-approval requirement contained in Education Law § 268 would be obviated by invoking Article 10 of the Not-For-Profit Corporation Law ("N-PCL") to dissolve the public library. Section 216-a(4)(a) provides that the N-PCL applies to a corporation chartered by the Regents, except that "[i]f a provision of the not-for-profit corporation law conflicts with a provision of this chapter . . ., the provision of this chapter . . . shall prevail and the not-for-profit corporation law shall not apply in such case." Because the Education Law provides several avenues that would enable the proposed association library to replace and assume the operations of the Corning Area Public Library, we need not reach the question of the applicability of article 10 of the N-PCL to this situation.
We conclude that although voter approval is required to abolish a public library under Education Law § 268, a public library may be abolished or dissolved under sections 219 and 220 without voter approval. Furthermore, all the property of a public library may be transferred to a free association library under section 266 without voter approval.
Very truly yours,
ELIOT SPITZER, Attorney General